IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BARBARA ANDREWS, *et al.*, § <br> § <br> Plaintiffs, § <br> v. § <br> § <br> ROSEWOOD HOTELS & RESORTS, § <br> LLC, AND TY WARNER HOTELS, § <br> & RESORTS, LLC, § <br> § <br> Defendants. § | Civil Action No. **3:19-CV-01374-L** |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiffs' Motion to Exclude the Report and Testimony of Defendants' Expert Joseph B. Sala and Brief in Support (Doc. 67), filed on June 18, 2021. After careful consideration of the motion, brief, response, reply, pleadings, and applicable law, the court **denies** Plaintiffs' Motion to Exclude the Report and Testimony of Defendants' Expert Joseph B. Sala; and **will not exclude** Dr. Joseph B. Sala's report or testimony from the trial of this matter at this juncture.

**I.  Factual and Procedural Background**

This action arises from the death of Douglas Andrews ("Mr. Andrews"), who died in September 2017 while on vacation with his wife Barbara Andrews ("Mrs. Andrews") and their friends after he sustained injuries from a fall into a runoff trough as he attempted to enter an infinity pool at Rosewood Hotels & Resorts, LLC, and Ty Warner Hotels, & Resorts, LLC's (collectively, "Defendants" or "Rosewood") Las Ventanas al Paraiso Resort ("Las Ventanas") in Los Cabos, Mexico. Mrs. Andrews, individually and on behalf of Mr. Andrews's estate, Keely Andrews, Braeden Andrews, and Connor Andrews (collectively, "Plaintiffs") filed this action in the 298th Judicial District Court of Dallas County, Texas, and it was removed to this court on June 7, 2019.

**Memorandum Opinion and Order – Page 1**

In their First Amended Complaint (Doc. 22), filed on February 6, 2020, Plaintiffs assert two causes of action: negligence and premise liability. Defendants seek to present Dr. Joseph B. Sala ("Dr. Sala") as a witness pursuant to Federal Rule of Evidence 702 at trial to testify that, based on a "human factors" analysis, the features of the infinity pool were sufficient to inform patrons of the proper entrance into the pool; no additional signage was necessary; and that the opinions of Plaintiffs' Rule 702 witnesses, Matthew Reynolds ("Mr. Reynolds") and Thomas Riegelman ("Mr. Riegelman"), fail to consider the relevant human factors. *See* App. to Pls.' Mot., Ex. C, Dr. Sala's Rep. ("Dr. Sala's Rep.") 18-19.

Plaintiffs argue that Dr. Sala's report and testimony should be excluded because (1) his opinions and testimony would not assist the jury, as they are based on common knowledge and experience, and (2) he lacks the requisite expertise or specialized knowledge to opine on the design, operation, or management of the infinity pool. Defendants respond that Plaintiffs misconstrue Dr. Sala's report and proposed testimony. They also contend that Plaintiffs' motion should be denied because Dr. Sala's report and testimony will assist the jury without invading its province and do not offer opinions as to the design, operation, or management of the infinity pool.

## II.  Expert Testimony Standard Under Federal Rule of Evidence 702

The admissibility of evidence is a procedural issue governed by federal law. *See Reed v. General Motors Corp.*, 773 F.2d 660, 663 (5th Cir. 1985). Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

      (d) the expert has reliably applied the principles and methods to the facts of the case.

      The trial court acts as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "*Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge" that is non-scientific in nature. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). In *Kumho Tire,* the Supreme Court resolved a split among the circuits and held that *Daubert*'s "gatekeeping" function applied to all expert opinion testimony based on specialized knowledge, not merely scientific expert testimony.

      As part of its gatekeeping role, the court determines the admissibility of expert testimony based on Rule 702, and *Daubert* and its progeny. The amendments to Federal Rule of Evidence 702, effective December 1, 2000, essentially codify *Daubert* and *Kumho Tire.* The Advisory Committee's Notes to Rule 702 state that the determination of whether an expert's opinions are reliable is based upon sufficient facts or data that calls for a "quantitative rather than qualitative analysis." In addressing this issue, the "question is whether the expert considered enough information to make the proffered opinion reliable. . . . The expert must base [his or her] opinion on at least the amount of data that a reliable methodology demands." 29 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 6268 (2d ed. 1987). Further, in reviewing a *Daubert* challenge, the court makes no credibility determinations; it only decides whether the threshold reliability standards have been satisfied. *See* Fed. R. Evid. 702 Advisory Committee's Notes (2000 Amendments).

      "The court may admit proffered expert testimony only if the proponent . . . demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is

**Memorandum Opinion and Order – Page 3**

reliable." *E.E.O.C. v. S & B Indus., Inc.*, No. 3:15-CV-641-D, 2017 WL 345641, at *2 (N.D. Tex. Jan. 24, 2017) (citing *Kumho Tire Co.*, 526 U.S. at 147) (internal quotation marks omitted). The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n. 10; *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). The court's inquiry is flexible in that "[t]he relevance and reliability of expert testimony turn[] upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (citation omitted). To be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 591). "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593); *see also* Fed. R. Evid. 702(d) (requiring that an "expert has reliably applied the principles and methods to the facts of the case").

"Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 592-93); *see also* Fed. R. Evid. 702(c) (requiring that "testimony [be] the product of reliable principles and methods"). "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Knight*, 482 F.3d at 355 (citation and internal quotation marks omitted). "The reliability prong mandates that expert opinion be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief," *Johnson*, 685 F.3d at 459 (internal quotation marks omitted); however, "there is no requirement that an expert derive

**Memorandum Opinion and Order – Page 4**

his opinion from firsthand knowledge or observation." *Deshotel v. Wal-Mart La., L.L.C.*, 850 F.3d 742, 746 (5th Cir. 2017) (internal quotation marks omitted).

"The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595; *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 623 (5th Cir. 2018) (quoting *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)). "The proponent need not prove to the judge that the expert's testimony is correct, but [it] must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (internal quotation marks omitted). On the other hand, if "there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered," the court may exclude the testimony as unreliable, as "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

"[C]ourts consider the following non-exclusive list of factors when conducting the reliability inquiry: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community." *Johnson*, 685 F.3d at 459 (internal quotation marks omitted). These factors, however, are not definitive or exhaustive. The reliability inquiry is flexible, and the district court conducting the *Daubert* analysis has discretion in determining which factors are most germane in light of the nature of the issue, the particular expertise, and the subject of the expert's testimony. *Daubert*, 509 U.S. at 593-95; *Kumho Tire Co.*, 526 U.S. at 142.

The Advisory Committee's Notes to Rule 702 contemplate that expert testimony may be based on experience, training, or both:

> Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony. *See, e.g., United States v. Jones*, 107 F.3d 1147 (6th Cir. 1997) (no abuse of discretion in admitting the testimony of a handwriting examiner who had years of practical experience and extensive training, and who explained his methodology in detail); *Tassin v. Sears Roebuck*, 946 F. Supp. 1241, 1248 (M.D. La. 1996) (design engineer's testimony can be admissible when the expert's opinions "are based on facts, a reasonable investigation, and traditional technical/mechanical expertise, and he provides a reasonable link between the information and procedures he uses and the conclusions he reaches"). *See also Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167, 1178 (1999) (stating that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

Fed. R. Evid. 702 Advisory Committee's Notes (2000 Amendments).

The Advisory Committee's Notes to Rule 702 further explain: "If the witness is relying solely or primarily on experience, then [he or she] must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* This is because the "trial court's gatekeeping function requires more than simply taking the expert's word for it" that the claimed basis supports the opinion. *Id.* (citation and internal quotation marks omitted); *Pipitone*, 288 F.3d at 245-47 (finding expert testimony reliable when the expert explained how his experience in the field led him to opine that an absence of contamination of some samples did not undermine his conclusion that the plaintiff's infection came from the same drug). Overall, the trial court must strive to ensure that the expert, "whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. As stated earlier, the relevance and reliability

of expert testimony turn upon its nature and the purpose for which its proponent offers the testimony. *See, e.g., Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 195 (5th Cir. 2006) ("Of course, whether a proposed expert should be permitted to testify is case, and fact, specific.") (citing *Kumho Tire*, 526 U.S. at 150-51).

The district court's gatekeeping role, however, is not meant "to serve as a replacement for the adversary system: Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Primrose Operating Co. v. National Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (quoting *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996)); *accord Williams*, 898 F.3d at 624 (quoting *Daubert*, 509 U.S. at 596). Thus, the district court's "*Daubert* analysis should not supplant trial on the merits," *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) (citation omitted), and, generally speaking, issues regarding the bases and sources of an expert's opinion that affect the weight of an opinion rather than the admissibility of the opinion "should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). The reasoning behind this general rule is consistent with the Advisory Committee's Notes to Rule 702, which state:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.

Fed. R. Evid. 702 Advisory Committee's Notes (2000 Amendments).

At times, practitioners confuse and misapprehend Federal Rules of Evidence 701 and 702. Rule 701 pertains to opinion testimony by lay witnesses, and Rule 702 pertains to opinion

testimony by experts or specialists in a particular field. The difference between the types of opinion testimony is aptly stated as follows:

> If the witness is only testifying as a lay witness, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences [that] are (a) rationally based on the perception of the witness[;] (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue[;] and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701. "[T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning [that] can be mastered only by specialists in the field." *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) (internal quotations omitted). As explained by the Second Circuit, "a lay opinion must be the product of reasoning processes familiar to the average person in everyday life." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005). Moreover, any part of a witness's opinion that rests on scientific, technical, or specialized knowledge must be determined by reference to Rule 702, not Rule 701. Fed. R. Evid. 701 advisory committee's note.

*United States v. Cooks*, 589 F.3d 173, 179-80 (5th Cir. 2009).

### III.  Discussion

#### A.  Introduction

As previously stated, "[t]he court may admit proffered expert testimony only if the proponent . . . demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *S & B Indus.*, 2017 WL 345641 at *2 (citing *Kumho Tire Co.*, 526 U.S. at 147) (internal quotation marks omitted). As the proponent of Dr. Sala's testimony, Rosewood must make a showing by a preponderance of the evidence at trial that such testimony is admissible. *See Daubert*, 509 U.S. at 592 n.10; *Johnson*, 685 F.3d at 459. "Human factors is the scientific study of the capabilities and limitations of people as they interact with the environment, technology, roadways, and so forth." *Pennington v. UPS Ground Freight, Inc.*, 2018 WL 1881259, at *1 (N.D. Miss. Apr. 19, 2018) (citing *Mihailovich v. Laatsch*, 359 F.3d 892, 915 (7th Cir. 2004)). Regarding human factors, the Seventh Circuit explained:

> Broadly speaking, a human factors analysis focuses on the interaction between human behavior and the design of a machine, product, or . . . a particular roadway. An expert engaging in such an analysis will consider whether, in light of predictable human behavior, the design or condition of the subject item poses a potential hazard.

*Laatsch*, 359 F.3d at 915.

Plaintiffs contend that the opinions and conclusions Dr. Sala "will not assist the trier of fact in determining the ultimate issues in this litigation and may actually confuse or mislead the jury into believing that Dr. Sala possesses some specialized knowledge or expertise for which he has offered no support." Pls.' Mot. 1. They also argue that he is not qualified to opine on the design, operation, and management of the infinity pool. Dr. Sala draws the following conclusions in his report:

- Visual and perceptible features of the infinity pool and the incident area are sufficient to inform patrons that the area where the incident is alleged to have occurred is not an appropriate entry point to the pool and an attempt to do so would expose oneself to potential hazards.

- Visual and perceptible features of the infinity pool and the incident area are sufficient to inform patrons on the lawn area and/or in the vicinity of the area where the incident is alleged to have occurred that an appropriate entry for the pool can be accessed through the spa, adjacent to the circular concrete walkway, approximately 40' from the incident area.

- No additional or alternative signage is necessary to communicate that the incident area was not an appropriate entry, or that an appropriate entry area would be through the spa, adjacent to the circular concrete walkway.

- There is no scientific reason to believe that additional or alternative warnings or signage would have altered Mr. Andrews's decisions or behavior or averted this incident.

- The opinions put forth by Mr. Reynolds and Mr. Riegelman with respect to the visual features of the incident area, the options available to Mr. Andrews at the time of the incident, and the need for and effect of additional or alternative measures to mitigate such a "hazard" fail to consider the relevant scientific disciplines, research, and findings, ignore key case facts, and are speculative.

Dr. Sala's Rep. 18-19.  For purposes of Rule 702, Dr. Sala bases his opinions and conclusions set forth in his report on studies, experience, observations, and scientific literature.  *See, e.g.*, *id.* at 1, 3, 14-16.

      **B.**      **Necessity of Dr. Sala's Report and Testimony**

"Jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses or proof of circumstances from which inferences can fairly be drawn."  *Huffman v. Union Pac. R.R.*, 675 F.3d 412, 419 (5th Cir. 2012) (quoting *Fontenot v. Teledyne Movible Offshore, Inc.*, 714 F.2d 17, 20 (5th Cir. 1983)).  "This general rule gives way, though, when conclusions as to the evidence cannot be reached based on the everyday experiences of jurors, making expert testimony necessary to evaluate the issue."  *Id.* (citing *Caboni v. General Motors Corp.*, 398 F.3d 357, 361 (5th Cir. 2005)).  Expert testimony is not needed, however, where the jury is "as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation."  *Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962); *see In re Schooler*, 725 F.3d 498, 514 (5th Cir. 2013).

Dr. Sala's report provides a human factors analysis of "multiple perceptual cues available" at and around the subject Las Ventanas infinity pool.  *See* Dr. Sala's Rep. 12.  These "perceptual cues" that he argues "inform a patron that [the incident] area is not a designated entry or set of steps intended for patrons to navigate" include the following: "white concrete lawn edging [] clearly contrasted against the infinity pool edge indicating separate structures;" "the white concrete lawn edging and the infinity pool edge;" "the height difference and distance between" the concrete lawn and infinity pool; the "continually washing" water from the pool; and "the 'back sloped'

Memorandum Opinion and Order – Page 10

nature of the infinity pool edge." *Id.* Dr. Sala also describes what he calls "visual cues"—including "the flow and cascade of the water over the infinity pool edge"—that "inform[] an individual of hazards which would require careful navigation and provide further indication that this is not a designated entry into the pool." *Id.* at 13. Additionally, he identifies "other nearby areas" that "provide an individual with an entry flush with the water, requiring neither a step up [n]or a step down before entering the water." *Id.* According to Dr. Sala, "[t]he perceptual cues available at the incident location were sufficient to inform individuals that the incident location was not a designated or appropriate entry location," and "would likewise indicate the locations of safe routes of entry into the pool from the lawn area." *Id.* at 14. Additionally, he contends that "[n]o additional or alternative signage was necessary in order to communicate these points." *Id.*

Plaintiffs argue that "the jury is fully capable of reviewing the photographs of the accident scene, listening to the testimony of the witnesses' recollection of events, judging their credibility and draw final conclusions about the sequence of events resulting in Mr. Andrews's fall." Pls.' Mot. 8-9. While this may be true, it does not support the exclusions of Dr. Sala's opinions or conclusions. Dr. Sala's report and proposed testimony focus on information processing of an individual's perceptions and how those perceptions affect his or her navigation of an area or pathway. Specifically, he focuses on the area where Mr. Andrews attempted to enter the pool—the incident area—and whether or not there were adequate visual or perceptual cues to indicate that this was not a designated or appropriate point of entry into the pool.

Dr. Sala employs a similar human factors analysis to address whether additional or alternative signage would have prevented Mr. Andrews's attempted entrance at the incident area. His analysis takes seemingly ordinary observations and applies scientific, ergonomic analysis to specific visual or perceptual cues to opine as to whether an individual could determine, based on

**Memorandum Opinion and Order – Page 11**

those cues, that the incident area was an inappropriate point of entry into the pool. Dr. Sala also bases his conclusions in this context on other "*designated* entry points into the pool." Dr. Sala's Rep. 13 (emphasis added). Moreover, Plaintiff's argument that Dr. Sala's opinions are "well-within the realm of the average juror's common knowledge and experience," Pls.' Mot. 17, improperly substitutes the analytical framework of human factors and ergonomics—which is a field of study based on scientific experimentation—with the everyday experience, reason, and logic of a layperson.[1]

Dr. Sala's report, therefore, offers expert and specialized analysis that provide more than mere observations and conclusions that an average juror could reach independently based on other evidence and testimony offered at trial. Stated differently, the first four opinions and conclusions Dr. Sala draws in his report—specifically, (1) features of the infinity pool were sufficient to inform patrons that the incident area was not an entry point and attempting entry at that location would be hazardous; (2) features of the infinity pool were sufficient to inform patrons of an appropriate entry point approximately 40 feet from the incident area; (3) no additional signage is necessary to indicate appropriate and inappropriate entry points; and (4) no additional signage would have caused Mr. Andrews to change his behavior, Dr. Sala's Rep. 18-19—do not invade the province

---

[1] Dr. Sala explains in his Affidavit:

> Especially in the fields of human behavior and human performance, scientific findings are often perceived as "obvious" or "commonsense," and thus able to be evaluated by a layperson. However, such phenomena require validation through experimentation and careful observation, and are often found to be quite the opposite of conclusions drawn by laypeople.

App. to Defs.' Resp., Ex. C, Aff. of Joseph B. Sala in Supp. of Resp. to Pls.' Mot. to Exclude the Rep. and Test. of Defs.' Expert Joseph B. Sala ("Dr. Sala's Aff."), ¶ 8.

of the jury as the fact-finder by simply offering conclusions that an average juror could reach based solely on his or her everyday experiences.

      C.    **Dr. Sala's Opinions and the Design, Operation, and Management of the Infinity Pool**

As discussed above, in addition to other requirements, Defendants must demonstrate by a preponderance of the evidence that Dr. Sala is *qualified* to testify at trial and offer opinions as a witness pursuant to Federal Rule of Evidence 702. *See S & B Indus.*, 2017 WL 345641 at *2. The fifth and final conclusion that Dr. Sala draws in his report is that the opinions of Plaintiffs' experts, Messrs. Reynolds (a civil engineer) and Riegelman (a hospitality executive), regarding the

> visual features of the incident area, the options available to Mr. Andrews at the time of the incident, and the need for and effect of additional or alternative measures to mitigate such a "hazard" fail to consider the relevant scientific disciplines, research, and findings, ignore key case facts, and are speculative.[2]

Dr. Sala's Rep. 19. Plaintiffs contend that "Dr. Sala is not qualified to offer opinions suggesting that Plaintiffs' experts are incorrect and that Defendants met the applicable standard of care in their ownership, management and operation of the pool." Pls.' Mot. 16. Defendants respond that Plaintiffs mischaracterize Dr. Sala's report and that he "expressed no opinions related to the design, operation, and management of the pool area." Defs.' Resp. 11. The court agrees. Therefore, the court need not address his qualifications to opine on such matters as he does not offer opinions on those subjects.

Moreover, Dr. Sala rebuts the opinions of Messrs. Reynolds and Riegelman as they pertain to human factors but does not venture outside his claimed area of expertise. His criticism is that Plaintiffs' experts offer opinions—specifically regarding visual features of the infinity pool and

---

[2] Although Dr. Sala opines on the inadequacy of the opinions of both Messrs. Reynolds and Riegelman, his rebuttal focusses primarily on those of Mr. Reynolds. *See* Dr. Sala's Rep. 16-18.

surrounding area, the "danger" posed there, and the alleged preventative value of warning signs—that depend on human factors analysis that they are not qualified to offer.[3] Plaintiffs also argue that Dr. Sala's opinions in this context would be cumulative as Defendants have already designated other experts to rebut the opinions of Plaintiffs' experts. *See* Pls.' Mot. 16, n.1. The court disagrees. As Dr. Sala is the only human factors expert that Rosewood plans to use, the court cannot say that the testimony of Defendants' other experts will address the human factors analysis Defendants offer through Dr. Sala's report and testimony. Thus, Dr. Sala's opinions are not cumulative.

### IV. Conclusion

For the reasons herein stated, the court **determines** that the report and testimony of Dr. Sala as proposed will assist the jury in understanding the evidence or determining a fact at issue without invading their fact-finding province; do not exceed the scope of his expertise; and are not cumulative. Accordingly, the court **denies** Plaintiffs' Motion to Exclude the Report and Testimony of Defendants' Expert Joseph B. Sala (Doc. 67), and Dr. Sala's report and testimony are **not excluded** from the trial of this matter at this juncture. As the proponent of Dr. Sala's testimony, Defendants must nevertheless establish its admissibility by a preponderance of the evidence at trial.

**It is so ordered** this 10th day of December, 2021.

*[signature: Sam A. Lindsay]*

Sam A. Lindsay
United States District Judge

---

[3] Defendants argue that "[u]nlike the role of a civil engineer or one with experience in hotel management, a human factors expert investigates how an individual's perceptions, information processing, and physical capabilities and limitations affect the way users interact with the pool and surrounding areas." Defs.' Resp. 7 (quoting Dr. Sala's Aff., ¶ 16) (internal quotation marks omitted).